UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA R. CHILDS,

                    Plaintiff,           Civil Action No. 19-11485
                                              Honorable Thomas L. Ludington
v.                                          Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 14]

Plaintiff Barbara Childs ("Childs") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Childs is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, Childs' Motion for Summary Judgment **(ECF No. 10)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN**

**PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.   REPORT

### A.   Background

At issue in this case is whether Childs was disabled between her alleged onset date of November 19, 2009, and her date last insured of September 30, 2012. She was 43 years old at the time of her alleged onset date, and at 5'1" tall weighed approximately 130 pounds during the relevant time period. (Tr. 1187). She completed high school and obtained a medical administrative assistant certificate. (Tr. 289). Previously, she worked as a receptionist, secretary, and delivery driver. (Tr. 242, 289). She stopped working on February 25, 2008, when she was fired after causing a car accident. (Tr. 288). Childs alleges disability as a result of diabetic neuropathy, gastroparesis, retinopathy (and possible macular degeneration), coronary artery disease, arthritis, memory loss, carpal tunnel syndrome, diabetic nephropathy, and fibromyalgia. (Tr. 61, 288). She also has degenerative disc disease in both her neck and back, which limits her range of motion, and frozen shoulder syndrome, which renders her unable to lift her arms above her head. (Tr. 66-68). Childs also was diagnosed with thyroid cancer and underwent a thyroidectomy in October of 2012. (Tr. 62).

During the relevant time period, Childs experienced dizziness, fatigue, pain and numbness in her extremities, forgetfulness, vomiting, and diarrhea, and had difficulty standing and walking. (Tr. 63, 67, 253, 258, 268). On a daily basis, she had chest pain and

difficulty breathing, particularly with exertion. (Tr. 62). She also suffered from depression, anxiety, and panic attacks; attempted suicide once; and continued to have suicidal thoughts. (Tr. 68-69, 71).

On November 16, 2010, Childs filed an application for DIB, alleging disability as of November 19, 2009. (Tr. 221-22). Her application was denied initially on October 19, 2011. (Tr. 120-24). After an administrative hearing held on July 16, 2012 (Tr. 38-57), ALJ Andrew Sloss issued a written decision, dated August 6, 2012, finding that Childs was not disabled under the Act. (Tr. 97-106). On September 13, 2013, the Appeals Council issued an Order remanding the case to the ALJ for further administrative proceedings, including further evaluation of Childs' coronary artery disease and history of thyroid cancer. (Tr. 112-15).

After remand, a second administrative hearing was held on January 13, 2014, before ALJ Sloss. (Tr. 58-76). On February 27, 2014, ALJ Sloss again denied Childs' application for DIB, finding that she was not disabled under the Act prior to September 30, 2012. (Tr. 16-30). On May 26, 2015, the Appeals Council denied review. (Tr. 1-4). As a result, Childs filed a federal court complaint on June 22, 2015. (Tr. 1275-77). On August 5, 2016, this Court issued a Report and Recommendation ("R&R") to grant Childs' motion for summary judgment, deny the Commissioner's motion for summary judgment, and remand the case for further proceedings. (Tr. 1258-73). The R&R was adopted over the Commissioner's objections by the Honorable Thomas L. Ludington on September 22, 2016. (Tr. 1252-57). As a result, on November 8, 2016, the Appeals Council issued an Order remanding the case once again, this time with instructions that it be assigned to a

different ALJ. (Tr. 1278-82).

After that remand, a third administrative hearing was held on June 15, 2017, before ALJ Kevin Fallis. (Tr. 1181-1226). Childs, who was represented by attorney Timothy MacDonald, testified at the hearing, as did vocational expert Stephanie Lorey. (*Id.*). On September 28, 2017, ALJ Fallis denied Childs' application for DIB, finding that she was not disabled under the Act prior to September 30, 2012. (Tr. 1153-70). On May 9, 2019, the Appeals Council denied review. (Tr. 1136-41). Childs timely filed for judicial review of that final decision on May 21, 2019. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Childs' medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Childs was not disabled under the Act during the relevant time period. At Step One, the ALJ found that Childs did not engage in substantial gainful activity between November 19, 2009 (the alleged onset date) and September 30, 2012 (the date last insured). (Tr. 1155). At Step Two, the ALJ found that, through the date last insured, she had the severe impairments of

5

diabetes mellitus, neuropathy, gastroparesis, carpal tunnel syndrome, cubital tunnel syndrome, papillary thyroid carcinoma, fibromyalgia, osteoarthritis, degenerative joint disease, rotator cuff bilateral injury with residuals, coronary artery disease, hypertension, major depressive disorder, and panic disorder without agoraphobia. (Tr. 1156). At Step Three, the ALJ found that Childs' impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Childs' residual functional capacity ("RFC"), concluding that she was capable of performing light work, with the following additional limitations: must have the opportunity to sit or stand alternatively, provided she is not off task more than 10% of the work period; occasional pushing and pulling, but no climbing of ladders, ropes, or scaffolds or more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, and should never perform any reaching overhead; frequent bilateral handling of objects and fingering; must avoid concentrated exposure to extreme cold, extreme heat, wetness, or humidity; must avoid all exposure to vibration; must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases; must avoid concentrated use of hazardous moving machinery; must avoid all exposure to unprotected heights; limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions, routine workplace changes, and only occasional superficial interaction with the public. (Tr. 1157).

At Step Four, the ALJ found that, through her date last insured, Childs was not able to perform any past relevant work. (Tr. 1168). At Step Five, the ALJ determined, based

6

in part on testimony provided by the vocational expert in response to hypothetical questions, that Childs was capable of performing the jobs of marker (75,000 jobs nationally), router (85,000 jobs), and inspector/hand packager (35,000 jobs). (Tr. 1169). As a result, the ALJ concluded that Childs was not disabled under the Act prior to her date last insured. (Tr. 1170).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by

7

the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

As set forth above, in his 2014 decision, ALJ Sloss found that, through Childs' date last insured, she had the RFC to perform light work, with certain additional limitations, including, in relevant part, frequent climbing of ramps or stairs; frequent pushing, pulling, or handling bilaterally; and occasional climbing of ladders, ropes, and scaffolds. (Tr. 20). In reaching this conclusion, ALJ Sloss cited favorably the opinion of state agency physician, Russell Holmes, M.D., who, on August 30, 2011, reviewed Childs' medical records and opined that she was limited in these exact respects. (Tr. 28 (citing Tr. 87-88)).

In its prior opinion, this Court found that ALJ Sloss erred in relying on Dr. Holmes' August 2011 opinion in light of evidence that Childs' "existing impairments continued to worsen, while new conditions developed, none of which could have been considered by Dr. Holmes in formulating his opinion." (Tr. 1268). Recognizing that, under the

circumstances, it was error for ALJ Sloss to accord significant weight to a "stale" opinion of a non-treating source,[1] the Court explained:

> Here, at the time Dr. Holmes issued his opinion, Childs was being treated for postural hypotension related to diabetic autonomic neuropathy; however, it appeared that this condition was improving somewhat with the use of support hose and limited salt intake. (Tr. 385). EMG testing performed on November 5, 2010, confirmed moderate bilateral carpal tunnel and cubital tunnel syndrome, and neurologist Devinderjit Bhangu, M.D. recommended that Childs avoid repetitive hand/wrist/elbow movements and pressure over the elbows. (Tr. 377-79). Moreover, Childs had undergone a cardiac catheterization on March 29, 2011, which revealed a 70% obstruction in the left anterior descending artery. (Tr. 524-25). Cardiologist Ramesh Misra, M.D. performed angioplasty on that date and placed a drug eluting stent. (*Id.*). At subsequent visits to her primary care provider, Gerald Fulton, M.D., on May 23, 2011, and June 29, 2011, Childs continued to report shortness of breath and fatigue, particularly with exertion, but pulmonary function testing and a sleep study were normal. (Tr. 536, 550, 556, 631, 915).
>
> After Dr. Holmes opined as to Childs' RFC, however, the record evidence suggests that Childs' existing impairments continued to worsen, while new conditions developed, none of which could have been considered by Dr. Holmes in formulating his opinion. For example, Childs continued to report intermittent chest pain and shortness of breath with exertion from October 2011 through the spring of 2012. (Tr. 629, 879-80, 885-88, 891, 896). On April 9, 2012, Childs presented to her new cardiologist, Wilfredo Rivera, M.D., reporting shortness of breath with exertion, fatigue, and back pain. (Tr. 649-50). She had a normal EKG, but Dr. Rivera suspected an under-deployed stent and recommended a second cardiac catheterization. (*Id.*). That procedure, which took place on April 10, 2012, revealed in-stent restenosis of the left anterior descending artery, and Childs underwent successful cutting balloon angioplasty with stent insertion. (Tr. 651-53). At a follow-up visit to Dr. Rivera on May 31, 2012, Childs continued to report shortness of breath that

---

[1] *See, e.g., Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408-09 (6th Cir. 2009); *Blanchard v. Comm'r of Soc. Sec.*, No. 11-12595, 2012 WL 1453970, at *18 (E.D. Mich. Mar. 16, 2012); *Garber v. Astrue*, No. 1:10-CV-00845, 2012 WL 1069017, at *10 (N.D.N.Y. Mar. 2, 2012) ("It is true that stale, conclusory reports of state agency officials based upon incomplete medical records may not constitute substantial evidence.").

> was only "mildly improved" after the April 2012 procedure. (Tr. 1105-06). Dr. Rivera voiced a suspicion that her difficulty breathing might be "unrelated to her coronary artery disease." (Tr. 1106). Chest x-rays performed in August 2012 showed a mildly enlarged heart, and a May 2012 CT scan of Childs' lungs showed nodular opacities in both lungs. (Tr. 981-82, 1032, 1091). Pulmonary function testing performed in October 2012 also showed mild obstructive lung disease. (Tr. 960-62).
>
> Additionally, Childs was diagnosed with malignant thyroid cancer in 2012, which required extensive surgery of the neck, including a total thyroidectomy, in October 2012. (Tr. 970-72). Her recovery from this surgery was complicated by acute appendicitis; she was admitted to the hospital from December 13-20, 2012, for further surgery and recovery. (Tr. 1060). Subsequently, she was re-hospitalized from December 22-29, 2012, with an intra-abdominal abscess (an infected hematoma). (Tr. 1059). And, less than one month later, she was back in the hospital with fluid collection in her abdomen, and she underwent interventional radiology drainage. (Tr. 1058). Childs was again hospitalized from March 8-13, 2013, with intractable nausea and vomiting; an upper endoscopy was performed, which showed ulcerative gastritis esophagitis. (Tr. 1003, 1049).
>
> Dr. Holmes' opinion as to Childs' physical abilities is also at odds with subsequent medical records showing that she has significant orthopedic and arthritic problems with her spine, hips, knees, and shoulders. For example, on March 6, 2012, Childs saw Dianne Trudell, M.D., reporting complaints of back, hip, knee, and hand pain. (Tr. 921-23). On examination, she had diminished grip strength, decreased range of motion in both upper extremities, and tenderness over her spine. (Tr. 921-22). Dr. Trudell diagnosed Childs with "diffuse pain syndrome most consistent with fibromyalgia" and referred Childs to a pain management physician. (Tr. 923). As a result, Childs saw Angel Rigueras, D.O., on March 14, 2012, with continued complaints of chronic pain in her joints. (Tr. 940-44). Dr. Rigueras prescribed Norco for pain. (Tr. 944). By April 2012, Dr. Rigueras had switched Childs to oxymorphone because of a sensitivity to other pain medication. (Tr. 938).

(Tr. 1267-70). Thus, in its R&R, the Court concluded that the 2011 opinion of Dr. Holmes, a non-examining state agency physician, did not constitute substantial evidence supporting

10

the ALJ's determination that Childs could perform a reduced range of light work. (Tr. 1258-72).

In the 2017 decision that is now before the Court, ALJ Fallis specifically referenced this Court's prior R&R, noting its finding that ALJ Sloss' "decision improperly relied on the non-treating source opinion of Dr. Holmes, did not take into account all evidence after the August 2011 assessment of Dr. Holmes, and 'minimized or mischaracterized' the evidence of record." (Tr. 1153 (citations omitted)). ALJ Fallis went on to comment, "The District Court in effect is ordering a new decision supported by substantial evidence of the whole record without more specific instructions." (*Id.*).

Despite the clarity of the R&R's conclusion that it was error to assign significant weight to Dr. Holmes' August 2011 opinion, ALJ Fallis, on remand, again afforded this opinion "significant weight," stating:

> [T]he opinion is consistent with the evidence of record prior to and after the date last insured. The evidence includes her being clinically stable from a cardiac perspective, no indication of recurrent thyroid cancer, being clinically stable with respect to diabetes and requiring little orthopedic treatment prior to her date last insured.

(Tr. 1165). As Childs points out in her motion for summary judgment, however, and as explained in detail above, most of the reasons articulated by ALJ Fallis for crediting Dr. Holmes' opinion are simply not supported by the record. To begin with, Childs was not "clinically stable from a cardiac perspective" during the relevant time period; in fact, she required additional surgery after Dr. Holmes issued his opinion and prior to her date last insured. (Tr. 651-53). Similarly, despite ALJ Fallis' observation that there was "no indication of recurrent thyroid cancer," Childs' thyroid surgery and subsequent recovery

11

were fraught with complications, fatigue, and emotional distress, factors which he appears to have dismissed.[2] (*E.g.*, Tr. 799-800, 1041-42, 1058-60). Finally, ALJ Fallis' description of Childs' diabetes as "clinically stable" is also erroneous, as this condition resulted in numerous complications, including neuropathy, macular degeneration, diabetic retinopathy, and diabetic autonomic neuropathy (causing dizziness and falls). (ECF No. 10, PageID.1780). Thus, regardless of this Court's prior instructions, ALJ Fallis' decision to give significant weight to Dr. Holmes' opinion is not supported by substantial evidence.

The only new evidence cited by ALJ Fallis in support of his conclusion that Childs could perform a reduced range of light work is the opinion of Harold Nims, D.O., who examined Childs on March 9, 2017 (nearly five years after her date last insured). (Tr. 1164). ALJ Fallis gave this opinion "partial weight," apparently rejecting the portion of Dr. Nims' opinion – which aligns with that of Childs' primary care physician, Dr. Goleba[3] – that Childs could at most stand or walk for two hours in an eight-hour day. (Tr. 1166). In weighing Dr. Nims' opinion, ALJ Fallis found that such standing/walking limitations "are not supported by the record, examinations, objective testing or other medical opinions at the time of or prior to the date last insured." (*Id.*).

---

[2] Additionally, the "non-recurrence" of Childs' thyroid cancer after her surgery in October 2012 simply means that disease did not develop anew. It says nothing about the far more significant issues – the impact Childs' thyroid cancer had on her leading up to her surgery, and how she managed during the recovery process, bearing in mind that these timeframes straddled her date last insured.

[3] On June 8, 2017, Dr. Goleba completed a Medical Source Statement, opining that Childs can stand for only two hours and walk for only one hour in an eight-hour day. (Tr. 1699-1700).

12

Again, however, there is a lack of substantial evidence supporting ALJ Fallis' conclusion that Childs could perform the standing and walking requirements of light work prior to her date last insured. Rather, the relevant records show that, in the year leading up to her date last insured, Childs received two cardiac stents, was diagnosed with coronary artery disease, was noted to have an enlarged heart, was diagnosed with COPD, and complained of fatigue secondary to diabetes, heart disease, and endured the ordeal of a cancer diagnosis and extensive neck surgery. Her treating neurologist, Dr. Banghu, noted that she suffered from orthostatic hypotension due to autonomic dysfunction related to her underlying diabetes mellitus. (Tr. 381). Given all of this evidence, there is not substantial evidence in the record supporting a finding that Childs could stand or walk six hours of an eight-hour day, and the fact that ALJ Fallis modified Childs' RFC to allow her to sit up to 10% of the time changes nothing.

Additionally, ALJ Fallis' conclusion that Childs retains the ability to frequently lift and carry 10 pounds and frequently handle objects is not supported by substantial evidence. In addition to severe diabetic neuropathy, Dr. Bhangu diagnosed bilateral carpal tunnel and cubital tunnel syndrome in 2010, findings that were confirmed by EMG testing. (Tr. 377-79). A January 2011 physical examination showed reduced grip strength and reduced sensation in Childs' fingers. (Tr. 488-91). X-rays of the hands taken in December 2009 show degenerative spurring in the DIP joints, PIP joints, and a thumb, along with evidence of osteopenia and cysts in the carpal tunnel. (Tr. 424). Dr. Banghu indicated that as a result of her relevant conditions – "severe peripheral neuropathy," bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and arthritis, Childs could not engage in

13

"repetitive hand, wrist, and elbow movements and pressures." (Tr. 406). An orthopedist, Dr. Heming, who treated Childs for adhesive capsulitis, found that she could reach only "a little way" (Tr. 90, 643). X-rays of Childs' cervical spine taken in 2011 show a congenital fusion at C3-C4 and moderate degenerative changes from C4-C7. (Tr. 422). An MRI of the right shoulder showed tendinosis or a partial tear of the supraspinatus tendon; Childs was treated for adhesive capsulitis; and she had "significant loss of motion" in her right shoulder. (Tr. 616-18). Given all of this evidence, it is unclear without further explanation from the ALJ why he believed Childs was capable of frequent lifting, carrying, and handling during the relevant time period.

In sum, the Court agrees with Childs that the ALJ "engaged in no meaningful analysis in identifying express limitations in her residual functional capacity related to pain, fatigue, medication side effects,[4] ability to maintain attendance or stay on task secondary to coronary artery disease, two surgeries for cardiac stents or her thyroid cancer and related neck surgery." (ECF No. 10, PageID.1826) (footnote added). And, where, as here, an ALJ's decision selectively highlights pieces of record evidence that support his conclusion, while minimizing or failing to explain away other, significant, contrary pieces of evidence, his conclusion is not supported by "substantial evidence." *See Walker v. Comm'r of Soc. Sec.*, No. 12-11175, 2013 WL 2393178, at *13 (May 31, 2013); *see also Mukes v. Comm'r of Soc. Sec.*, 946 F. Supp. 2d 737, 747-48 (S.D. Ohio 2013) (ALJ erred in failing to consider all relevant evidence and instead relying only on evidence supporting her final conclusion).

---

[4] At the time of the 2012 hearing, Childs was taking approximately eighteen different medications (Tr. 306); by the time of the 2014 hearing, she was up to nineteen. (Tr. 319).

14

For all of these reasons, the Court cannot conclude that ALJ's RFC finding is supported by substantial evidence and, thus, recommends remand yet again.[5]

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, Childs' Motion for Summary Judgment **(ECF No. 10)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: July 13, 2020                   s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                                              United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a

---

[5] Childs urges that the case be remanded for an award of benefits, rather than for more administrative consideration under Sentence Four of 42 U.S.C. § 405(g), because "the claim has been pending for many years and subject to prior futile remands." (ECF No. 15, PageID.1830). While the Court is very concerned about the continued delays in this case, which has been pending since Childs filed her application in 2010, the evidence in its present state does not provide the "overwhelming" proof of disability necessary to reverse and award benefits. *See Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985). However, Childs is entitled to a full and fair analysis of the record evidence at the administrative level.

waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2020.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
